**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| BONITA LYNN CORMIER, | |
| Plaintiff/Counterclaim Defendant, | **CIVIL ACTION FILE** |
| vs. | **NO:  4:11-cv-305-HLM** |
| CHERYL XANTHOS and JOHN XANTHOS, | |
| Defendants/Counterclaimants. | |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

This is a Motion for Partial Summary Judgment brought under Federal Rule of Civil Procedure 56 and Local Rule 56.1.  The Counterclaimants here are Jay and Cheryl Xanthos, who seek judgment as a matter of law as to Counterclaimant-Defendant Bonita Cormier's intentional torts of trespass.  Cormier has previously pleaded guilty to criminal charges arising from her illegal acts, effectively establishing her liability for civil causes of action under *res judicata* principles and making partial summary judgment necessary.  In short, Counterclaimants seek partial summary judgment as to Cormier's **liability** for

- the intentional tort of trespass, which in and of itself entitles the Xanthoses to nominal and general damages;

- punitive damages, under O.C.G.A. § 51-12-5.1;

- reasonable costs of litigation, under O.C.G.A. § 13-6-11;

- fees under 28 U.S.C. § 1927, as Cormier's counsel has mustered arguments that go beyond the frivolous, in responding to the Xanthoses' counterclaims.

In support of such relief, the Xanthoses submit this Motion and supporting authorities, as well as a Statement of Material Facts as to Which There is No Issue to Be Tried.

## I.      Factual Background

"This case demonstrates the deleterious consequences that flow from neighbors turning the admonition to 'love your neighbor as yourself' on its head." *Turnage v. Kasper*, 307 Ga. App. 172, 172, 704 S.E.2d 842 (2010). The original plaintiff, and now counterclaim defendant, is **Bonita "Bonnie" Cormier**, who once resided in Rome, Georgia at 316 East 3rd Street.  Statement of Material Facts at ¶ 2.[1]  Her neighbors are the original Defendants and Counterclaimants, **Jay and Cheryl Xanthos**.  Statement of Material Facts at ¶ 1.  As outlined in prior briefing with the Court, this dispute arose when Cormier began feeding stray cats from her back porch, prompting an influx of feral animals to take up residence at the

---

[1]      The actual evidence that supports this Motion is cited within Counterclaimants' Statement of Material Facts.  Rather than duplicate citations, Counterclaimants cite to that Statement for purposes of this Motion.

Xanthoses' adjacent yard and home.  *Id.* at ¶ 3.  At any given time, **dozens** of cats alternatively roamed around, or lounged on, the Xanthoses' property.  *Id.*

Those animals were certainly predictable, producing unending late-night caterwauling, depositing no small amount of waste material in the Xanthoses' yard, and producing a stream of new stray cats to take up residence.  *Id.*  To the Xanthoses' knowledge, despite Cormier's known love of cats, she never took any of the strays inside her own home, or "adopted" them as her own.  *Id.*  at ¶ 4.

The toms in particular would indiscriminately mark the Xanthoses' yard, patio, and furniture with an unpleasant but readily identifiable odor.  *Id.* at ¶¶ 3-4.  Cormier continued to feed the strays for weeks, though none of whom ever wore a collar, or bore any indicia of actual ownership.  *Id.* at ¶¶ 3, 5.  That course of action was illegal, as the feeding and harboring of feral cats was unquestionably unlawful under a host of animal control ordinances.  *See*, *e.g.*, Floyd County Animal Control Ordinance § 2-5-23 (illegal to harbor animals who defecate on any place not controlled by owner, or that damages or abuses another's property); City of Rome Ordinance §§ 4-2 (illegal for person to keep any animal inside city limits that creates unsanitary or obnoxious condition); 4-49 (unlawful for owner of animal to let it run at large on the property of another person).

To rectify the situation, the Xanthoses contacted Floyd County Animal Control. That facility provided traps for the Xanthoses to use on their property, should the undomesticated cats continue to use their furniture and yard for their own purposes.  The Xanthoses did just that, frequently capturing filthy and unhygienic cats and then transporting those animals to the Animal Control offices. *Id.* at ¶¶ 4-5.

Cormier rather publically objected to this perfectly legal behavior, breaking several laws in the process.  On December 2, 2009, she walked onto the Xanthos property and took – to be blunt, stole – a cat trap that was on their lawn.  *Id.* at ¶ 6. More disturbingly, Cormier went to the front door of the Xanthos home and spattered it with wet cat food, and then, using the empty can, smashed it repeatedly against the front door window until it cracked.  *Id.*  When Cormier cursed at her, and insulted her for being "rich," prompting Mrs. Xanthos to summon her husband. *Id.*  After hurling a few insults at Mr. Xanthos about being a "gigolo" and "marrying a rich woman," Cormier retreated off the property.  *Id.*  at ¶ 7.  The Xanthoses called 911, and the responding officer ultimately ordered Cormier to drop the issue and stay off the Xanthos property, at the risk of arrest.  *Id.* at ¶ 9.[2]

---

[2]     Cormier has admitted that she knew the Xanthoses' property was private. *Compare* Docket No. 6 (Answer and Counterclaim) at Counterclaim ¶¶ 6-7 *with* Docket No. 10 (Cormier's Answer to Counterclaims) at ¶¶ 6-7 (Cormier admits

Despite that direct warning, the next morning (December 3), Cormier's behavior escalated. She posted two quite large banners across her front porch – in full view of passerby – that announced "MY RICH NEIGHBOR KILLS CATS." *Id.* at ¶ 10.  Going further, she again trespassed onto the Xanthos property and stole a second trap.  *Id.*  Again, the police were summoned.  *Id.*  at ¶ 11.

The responding officer sought direction from Mr. Xanthos, who communicated that he did not want to press charges, but that he did wish for (1) Cormier to take down the insulting banners; (2) to stop coming onto his property and stealing things; and (3) to stop feeding the strays.  *Id.* at ¶ 12.  The officer communicated these requests to Cormier, who explained that she would not accede to those requests, and that if her neighbors "put out the trap 30 times she would steal it 30 times," as she "would not stand by while kittens were murdered."  *Id.* Seemingly wanting to be arrested, Cormier had already packed her things to go to jail, and held out her hands to be cuffed. Id. at ¶ 12.

Cormier was ultimately charged with two counts of Criminal Trespass, and one count of Theft by Taking.[3]  *Id.* at ¶ 13.  Cormier pleaded guilty to two counts

knowledge that the Xanthoses' property was private, and that they had the right to exclude her).

[3]     There is a host of other bizarre and likely criminal behavior by Cormier here – for example, she was arrested yet again after a confrontation with the Xanthoses

of criminal trespass on April 13, 2011, admitting that she violated O.C.G.A. § 16-

7-21. *Id.* at ¶ 13.  That statute provides that

> A person commits the offense of criminal trespass when he or she
> knowingly and without authority: (1) Enters upon the land or premises of
> another person . . . for an unlawful purpose.

O.C.G.A. § 16-7-21(b)(1).

As part of her guilty plea, Cormier's allocution included specific admissions

as to the commission of the crime of Criminal Trespass.  Statement of Material

Facts at ¶ 14.  Those admissions are sufficient to establish liability at to Cormier's

trespass, punitive damages, and costs of litigation under O.C.G.A. § 13-6-11.

## II.    Procedural Posture

The Plaintiff filed her Complaint on December 30, 2011.  The Xanthoses

timely answered and filed their own counterclaims on January 20, 2012.  Docket

Entry 6.  The Xanthoses counterclaimed on three grounds – two claims for

intentional trespass, and one claim for false imprisonment.  *Id.* at 7-20.  The former

two claims are at issue here.

After substantial briefing as to the Xanthoses' Motion to Dismiss under Rule

12(b)(6), the Court dismissed Plaintiff's Complaint in its entirety.  At that point,

the case remained open due to the pending counterclaims.

---

at the Floyd County Animal Control Facility, for Disorderly Conduct – but any
such encounters are not before the Court for summary judgment purposes.

After Cormier failed to participate in drafting the Joint Discovery Plan, this Court ordered her input at risk of adoption of Defendants' own Plan.  Only then did Cormier chime in, and the Court ultimately approved a Joint Discovery Plan on March 14, 2012.  Since that time, Cormier has not filed an Amended Complaint, leaving only the Xanthoses' Counterclaims for resolution.

### III.    Argument and Citation of Authority

As an initial matter, this is a diversity case that turns on application of Georgia substantive law.  This Court well knows the standard for summary judgment under Rule 56:

> Federal Rule of Civil Procedure 56(c) authorizes summary judgment when there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate,  and may satisfy this burden by pointing to materials in the record.  Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial

> When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. The Court also must resolve all reasonable doubts about the facts in favor of the non-movant.  Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. Finally, the Court does not make factual determinations.

*Long v. Murray Co. Sch. Dist.*, Civil Action No. 4:10-cv-00015-HLM, 2012 U.S. Dist. LEXIS 86155, at *69-71 (May 21, 2012) (internal citations and punctuation omitted).  Cormier's own admissions are dispositive here, necessitating summary judgment as to liability on Counts I and II of the Xanthoses' Counterclaims.

A. Cormier is, as a matter of law, civilly liable for her criminal acts.

Cormier's guilty pleas as to her criminal trespass operate as judicial admissions, establishing the elements of an illegal trespass that gives rise to two separate causes of action:

> Collateral estoppel bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had a full and fair opportunity to litigate that issue in an earlier case. For collateral estoppel to be invoked 1) the issue must be identical in the pending case to that decided in the prior proceeding; 2) the issue must necessarily have been decided in the prior proceeding; 3) the party to be estopped must have been a party or have been adequately represented by a party in the first proceeding; and 4) the precluded issue must actually have been litigated in the first proceeding.

*Blohm v. Commission of Internal Revenue*, 994 F.2d 1542, 1553 (11th Cir. 1993).

Cormier could have rallied against the criminal charges brought against her; she did not.  She could have chosen to go to trial and put the matter to a good cohort of twelve; she did not.  She did, however, plead guilty, establishing as a matter of fact and law that she did trespass on the Xanthoses' property for an illegal purpose.

And in so doing, she has established as a matter of law that the civil claim at issue here has already been decided. "A guilty plea is an admission of all the elements of a formal criminal charge. . . . Guilty pleas must be rooted in fact before they may be accepted. . . . Once accepted by a court, it is the voluntary plea of guilt itself, with its intrinsic admission of each element of the crime, that triggers the collateral consequences attending that plea." *Id.*, 994 F.2d at 1554 (internal citations omitted).

This Court has confronted the same situation, and found that a litigant's prior confession of guilt operates to establish – as a matter of law – liability for a civil claim.   "Claimants are collaterally estopped from raising matters disposed of by a guilty plea in a related criminal matter." *United States v. All That Tract of Parcel of Land, Together with All Buildings and Appurtenances Thereon, Commonly Known as 204 Orchard Street, Rossville, Walker County, Georgia*, Civ. Action No. 4:90-cv-113-HLM, 1991 U.S. Dist. LEXIS 19301, at 8-9 (N.D. Ga. Feb. 4, 1991) (affirming summary judgment against tortfeasor/criminal); *see Miller v. United States*, 144 F. Supp. 734, (S.D. Ga. 1956) (elements of civil claim made out, *inter alia*, by tortfeasor's guilty plea in related criminal matter).[4]

---

[4]     It does not help Cormier's position that her conviction was made via a guilty plea, rather than a jury verdict.  *Blohm*, 994 F.2d at 1554 ("[F]or purposes of applying the doctrine of collateral estoppel, there is no difference between a

This is not a difficult syllogism.  Cormier has, prior to this litigation, represented in court that she was in fact guilty of two crimes.  Those crimes include the elements sufficient to establish a civil cause of action for trespass. Accordingly, there is no possible material fact in dispute here, and summary judgment is necessary as to liability.

B. Independently, Summary Judgment is Appropriate Based Upon Cormier's Answer to the Counterclaims

Though it is difficult to decipher, it appears that Cormier has also conceded that she is guilty of civil liability for her trespass.  In paragraph 12 of their Counterclaims, the Xanthoses allege that

> Cormier's knowing and willful entry onto the Xanthos property for purposes of stealing the cat trap was an unlawful act, making her ingress into the Xanthos property a criminal trespass, even without prior warning that her presence on the property was forbidden. O.C.G.A. § 16-7-21(b)(1).

Docket No. 6 (Answer and Counterclaims) at ¶ 12.

In her response, Cormier admits as much, though muddies the pleading by tacking on comment as to irrelevant (and not pleaded) information.

> Plaintiff **admits** the allegations stated in Paragraph 12 of Defendants' Counterclaims. The cat traps were illegal contraband and illegally placed to trap animals from Mrs. Cormier's residence. These traps were contraband.

---

judgment of conviction based upon a guilty plea and a judgment rendered after a trial on the merits.").

Docket No. 10 (Answer to Counterclaims) at ¶ 12 (emphasis added).

Other portions of the pleadings are dispositive as well.  Counterclaimants

also alleged that

> On April 13, 2010, Cormier pled guilty to two counts of trespassing (the offenses committed on December 2 and 3, 2009) . . . establishing *in judicio* that she did, in fact, commit the offense[s] and entitl[ing] counterclaimants to damages.

Docket No. 6 (Answer and Counterclaims) at ¶ 25.

In responding, it again appears that Cormier admitted that she had indeed

violated the law:

> Plaintiff admits in part the allegations stated in Paragraph 25, but, denies that Defendant entitled to damages, and demands a jury trial on this issue pursuant to the Seventh Amendment of the U.S. Constitution.

Docket No. 10 at ¶ 25.

Setting aside the substantially-too-late jury trial demand, it seems as if

Cormier has admitted the underlying behavior, but seeks to assert a sort of

"defense" to her trespass – that is, she was attempting self-help to save **her** cats

from being trapped.  *See generally* Cormier's Answer to Counterclaims, Docket

No. 10.

But that excuse is not one that can now be raised.  Having admitted the

elements of the crime – including unlawful entry with intent to commit an

**unlawful** act – theft – Cormier cannot now claim that her action was legally

justified, as that position is the precise opposite of the one that she has already admitted.  Her confession of illegality is binding.  "Were this not so, defendants pleading guilty would routinely proclaim their innocence to reap two benefits: (1) the avoidance of a trial and a possible reduction in sentence, and (2) the extinguishment of all collateral consequences of their plea."  *Blohm*, 994 F.2d at 1554.  This Court has previously rejected such an after-the-fact attack on a guilty plea, in the summary judgment context:

> Claimant's terse response to Plaintiff's Motion for Summary Judgment apparently seeks to attack the guilty plea. Claimant contends that the plea was involuntary, unknowing and entered as a result of the advice of incompetent counsel.  Claimant's deposition testimony indicates that Mr. Camp did not explain in full the consequences of her guilty plea and that the agreement was entered into in an attempt to have the charges against her daughter dropped.
>
> This Court is not persuaded, however, that such an argument can overcome the effect of the plea itself.  This is especially so where the established avenues for contesting pleas, such as during the original proceeding, by direct appeal or by section 2255, have not been used.

*204 Orchard Street*, 1991 U.S. Dist. LEXIS 19301, at 8-9.

The same result should apply here.  Cormier represented in a court of law that she indeed did illegally trespass on the Xanthos property, with the intent to perform an illegal theft.  Later, when the situation would suit her differently, she cannot take the opposite position.

C.  Sanctions under 28 U.S.C. § 1927 are appropriate as well.

Counterclaimants reluctantly, but justifiably, ask this Court for summary judgment under 28 U.S.C. § 1927 as well.  That statutory scheme provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  To determine if § 1927 sanctions are appropriate, this Court must find three factors:

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).  The test is objective – subjective bad faith or improper motive is not at issue.  *Amlong v. Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1240 (11th Cir. 2006). Put simply, a lawyer's conduct is evaluated in light of what a reasonable lawyer would have done. *Id.* ("Determining whether conduct is reckless necessarily involves comparing the conduct objectively against the conduct of a reasonable attorney.").

Reasonable lawyers do not institute suits as some sort of shakedown.  But that has happened here.  Given Cormier's repeated insults regarding the how "rich" the Xanthoses are, the profanity, the repeated hounding, and the flatly irrational

13

and erratic behavior, the investigatory bar needed to be raised here.  Unfortunately, this seems a lawsuit based out of jealousy, spite, or something similar, rather than good facts and law.  It is in those situations that sanctions are justified.  "Courts look with disfavor upon [any] sort of spite action."  *Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986); *Colliton v. Cravath*, Civ. Action No. 08cv0400, 2008 U.S. Dist. LEXIS 74388, at *39-41 (S.D.N.Y. Sept. 23, 2008) (sanctioning litigant when complaint appeared to "border on extortion[]")[5]

From the outset, the claims asserted in the Complaint were outrageous, lacking any apparent factual or legal basis.  The assault and battery claims were brought despite videotape of the alleged incident demonstrating no such intentional act – or any injury whatsoever – actually occurred.  Indeed, at the end of that particular fracas, Cormier was arrested and formally charged; only her guilty plea as to other crimes mooted another criminal proceeding.  The existence of firm, objective proof – ignored by Cormier and her counsel – warrants sanctions. *Worldwide Primates v. McGreal*, 887 F.3d 1252, 1255 (11th Cir. 1996) (reiterating that "an attorney cannot simply rely on the conclusory representations of a client").  Sanctions are particularly appropriate when available documents and public

---

[5]    Interestingly, in *Colliton*, the court sanctioned the lawyer/litigant plaintiff for actions similar to those taken in this case.  There, Colliton, as a jilted ex-employee, filed baseless claims for intentional infliction of emotional distress well after the statute of limitations had run, and did not bother pleading adequate facts besides.

records discount a plaintiff's rather fantastic version of events. *Ins. Benef.*
*Administrators, Inc. v. Martin*, 871 F.2d 1354, 1358-59 (7th Cir. 1989) (affirming
sanctions award when well-known documents contradicted plaintiff's claims).

The other claims over "unwanted magazines" were so unclear that they were
dismissed, but not before counsel admitted that the damages modality alleged in
the Complaint – a wrecked credit rating – was simply guess work, as counsel was
unaware as to whether Cormier **had even bothered** to check her credit scores
before filing suit.  Affidavit of Darren Summerville at ¶ 7.  Alternatively, and
giving the Complaint a very generous reading, it might have alleged defamation or
other reputational injury.  That, too, was completely frivolous, as the statute of
limitations would have run on such a claim one year after the alleged injury, far
before the Complaint was filed.  If Cormier and her counsel did not **know** that the
statute of limitations for such claims was one-year, that implies a failure to
investigate the proper governing law.  If they knew of the law, but alleged the
claim anyway, then that demonstrates improper use of the facts.  *Chang v. Meese*,
660 F. Supp. 782, 785 (D.P.R. 1987) (sanctioning counsel for bringing case outside
of statute of limitation); *DeSisto College v. Line*, 888 F.2d 755, 766 (11th Cir.
1989) (affirming sanctions award when counsel failed to recognize or cite adverse

precedent; reiterating that "maintaining a legal stance untenable with our law demonstrates . . . an ignorance of our law, and thus inadequate research").

The Rule 26(f) conference produced proof positive that this lawsuit has always been, in part, a bit of a shakedown.  As noted, the Complaint initially sought over **$2,000,000** in damages for (1) an assault that didn't happen, as confirmed by investigating police officers and (2) some unwanted magazines that Cormier promptly canceled without incident. Already the case sounded like something out of the Stella Awards, an annual review of the worst lawsuit abuses in the civil justice system.[6]

But the real motivation behind the lawsuit became clear. At the mandatory Rule 16/26(f) conference, Cormier's counsel suggested that $20,000 would settle the matter – a 99.5% discount off the Complaint, without the benefit of one iota of discovery or factual revelation.  Affidavit of Darren Summerville at ¶¶ 7-8.  One common scenario in which § 1927 is in play is when a plaintiff wildly overclaims a

---

[6]     The Stella Awards are named after Stella Liebeck, the infamous "McDonald's coffee lady." The "Awards" annually make the rounds, purportedly chronicling the most absurd lawsuits in a given year.  Though that list is fake, the rumor-debunking website snopes.com has an entertaining (and simultaneously depressing) list of actual cases, including a California lawsuit involving a man's $1.5 million dollar demand on behalf of his Labrador Retriever, which was attacked by a small cat.  A jury found for the Defendant, and the plaintiff was eventually order to pay a substantial penalty. *See* "Stella Awards" at http://www.snopes.com/legal/lawsuits.asp (last checked August 21, 2012).

cause of action and demands millions, without a real factual basis. *Indianapolis Colts v. Baltimore*, 775 F.2d 177, 182 (7th Cir. 1985)  (intentionally filing or prosecuting a claim that "lacks a plausible legal or factual basis" is grounds for a § 1927 sanction); *FM Indus. v. Citicorp Credit Servs.*, 614 F.3d 335, 339 (7th Cir. 2010) (affirming sanctions award when*, inter alia,*  counsel continued outrageous damage demands in face of adverse governing law; criticizing "extortion" tactics).

And the "direct" litigation participation has further expanded these proceedings, without any justification.  The Xanthoses have previously pointed out the problematic litigation behavior here – ignoring (literally) thousands of cases on a point; changing the "facts" underlying claims, to best survive a Motion to Dismiss; ignoring Eleventh Circuit precedent; and flat-out misciting or misattributing case quotes.  Affidavit of Darren Summerville at ¶¶ 5-6.  Those type of litigation abuses often serve as the basis for § 1927 sanctions.  *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 445-46 (6th Cir. 2006) (affirming sanctions award when counsel "asserted a number of near-frivolous claims," refused to dismiss claims in the face of clear adverse precedent, and filed "unreliable briefs" that "improperly took quotations out of context and made strained arguments based upon such misinterpreted citations").

The substantive frivolity continues.  In Answering the Counterclaims, Cormier took the incredible position that her criminal trespass was justified, because her neighbors were illegally trapping her cats, without a license.  Affidavit of Darren Summerville at ¶ 9.  That position cannot possibly be the product of a reasoned review of the law.

Cormier bases that "justification" defense on O.C.G.A. §§ 27-3-63 and 27-2-1.  Docket No. 10 at ¶ 8.  Those statutes are not reviewed terribly often by federal (or Georgia) courts, as they deal with the trapping of **wildlife**, not stray cats.  Both statutes are part of Chapter 27 of the Georgia Code, entitled "Game and Fish."  It should be altogether obvious from the general subject matter that statutes concerning mink or otter pelts (O.C.G.A. § 27-3-64) and alligator carcasses (O.C.G.A. § 27-3-73) do not govern a neighbors' dispute about stray cats in downtown Rome.  Even if not, the entire Code section **excludes** "domestic species," specifically enumerating cats as outside the "Game and Fish" scheme.  O.C.G.A. § 27-1-2(23) (defining "domestic species" as, amongst other animals, "dogs, cats, horses, cattle, ratites, and chickens."); *see also id.* 27-1-2(19) (defining "commercial trapper" as a "person who traps on any land other than that belonging to himself or to his immediate family.").

Even assuming that all three dozen of the feral cats at issue really were Cormier's pets, which is not supported by any shred of evidence whatsoever, her trespass was still illegal as a matter of law.  A full panoply of **legal** tools were at her disposal to confront any unlawful cat-trapping, but apparently went ignored. Cormier did not contact the police, nor seek help from Animal Control, nor seek relief from the courts – she broke the law instead, and professed to be willing to do it time and time again.  A lawyer cannot ignore the objective facts – like Cormier's guilty plea, like the video that exonerates the Xanthoses, like Cormier's multiple arrests, and like Cormier's obvious vendetta against her "rich" neighbors – and spin the wheel in federal court, hoping for a lucky win.  *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (sanctions warranted when "obvious facts" are met with "deliberate indifference").  Nor can counsel ignore settled law.

In sum, this lawsuit was never grounded in fact, but was instead about getting a strike-suit type settlement from a perceived deep pocket.  Even a modicum of investigation would have revealed the lack of objective basis for the litigation.  Sanctions are appropriate.

## IV.   Relief Sought

The Xanthoses seek the following rulings from the Court.  **First**, summary judgment as to Cormier's liability for repeated trespass is appropriate, as she has

already conceded as such in a court of law. That liability means that an award of **at least** nominal and compensatory damages are mandatory.  As longstanding statute establishes, "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." O.C.G.A. § 51-9-1.

> When a landowner has demonstrated that a trespass has occurred, general damages do not have to be proven with any "amount to an absolute certainty" for recovery of such damages. When there has been a tortious invasion of the property of another, i.e., trespass, such tortious conduct gives rise to the right to recover nominal damages to vindicate such right. As to general damages, where there is such a wrongful interference with the comfortable enjoyment of property by a person in possession, no precise rule for ascertaining damage can be given; therefore the [jurors] are left to say what, in their judgment, the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the trespass.

*Wright v. Wilcox*, 262 Ga. App. 659, 662, 586 S.E.2d 364 (2003) (internal citations omitted).

Beyond that straightforward concept, criminal trespass, in Georgia as elsewhere, carries with it several consequences beyond the criminal.  In particular, it also gives rise to a civil cause of action as an intentional tort.

**Secondly**, as an intentional tort, trespass mandates judgment as to liability on punitive damages.  "Punitive damages may be awarded in tort actions in which clear and convincing evidence proves that a defendant's actions showed willful

misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." *Tyler v. Lincoln*, 272 Ga. 118, 120, 527 S.E.2d 180 (2000) (internal citations/punctuation omitted); O.C.G.A. § 51-12-5.1 (establishing framework for punitive damages award).

Trespass is an intentional wrongdoing, and a repeated trespass will give rise to a punitive damage claim. *Teague v. York*, 203 Ga. App. 24, 25, 416 S.E.2d 356 (1992). It is the sacrosanct nature of property rights that gives rise to a punitive claim, as repeated trespass reflects "an intentional disregard of the rights of another." *LN West Paces Ferry Assocs., LLC v. McDonald*, 306 Ga. App. 641, 643, 703 S.E.2d 85 (2010)

**Third**, intentional torts like Cormier's necessitate an award of litigation costs, under Georgia's Code section 13-6-11.  That framework puts attorneys' fees and expenses in play when a litigant demonstrates "bad faith" in some underlying behavior – a finding inherent in an intentional tort like the violation here.  "[T]he intentional tort of trespass will support a claim for expenses of litigation and attorney fees under O.C.G.A. § 13-6-11. The legal theory is that the intentional nature of the trespass gives rise to the bad faith necessary for such recovery. *Paine v. Nations*, 283 Ga. App. 167, 171, 641 S.E.2d 180 (2006); *Mize v. McGarity*, 293

Ga. App. 714, 720-21, 667 S.E.2d 695 (20008) (same; quoting *Paine*).[7]

**Finally**, given the objective reality here, summary judgment is appropriate under 28 U.S.C. § 1927.  Given that the entire litigation seems some vendetta, rather than the product of a reasoned review of fact and law, the Xanthoses ask that the Court award attorney's fees commensurate with the efforts required to defend against this lawsuit.  Counsel's fees to date total $30,060.00.  Affidavit of Darren Summerville at ¶¶ 10-11; Affidavit of Robert K. Finnell at ¶¶ 11-12.

Respectfully submitted, this 22nd day of August, 2012.


s/Robert K. Finnell                                   s/Darren Summerville
The Finnell Firm                                      Summerville Moore, P.C.
P.O. Box 63                                           400 Colony Square, Ste. 1900
Rome, Georgia 30162-0063                              1201 Peachtree Street, NE
Tel:  (706) 235-7272                                  Atlanta, Georgia 30361
Email: bob@finnellfirm.com                            T: 770.635.0073
                                                      Email: Darren@summervillemoore.com

***Counsel for Defendants/Counterclaimants***

---

[7]       The case law here is unanimous.  *See*, *e.g*., *LN West Paces Ferry Assocs., LLC v. McDonald*, 306 Ga. App. 641, 643, 703 S.E.2d 85 (2010) (trespass entitled property owners to both compensatory and punitive damages, as well as attorney's fees under O.C.G.A. § 13-6-11).

## <u>CERTIFICATION OF COMPLIANCE WITH LR 5.1(C)</u>

This is to certify that the foregoing **MOTION FOR PARTIAL SUMMARY JUDGMENT** was prepared using Times New Roman 14 point font in accordance with LR 5.1(C).

Respectfully submitted, this 22nd day of August, 2012.


s/Robert K. Finnell            s/Darren Summerville

Georgia Bar No.  261575        Georgia Bar No. 691978

The Finnell Firm               Summerville Moore, P.C.

P.O. Box 63                   400 Colony Square, Ste. 1900

Rome, Georgia 30162-0063     1201 Peachtree Street, NE

Tel:  (706) 235-7272           Atlanta, Georgia 30361

Email: bob@finnellfirm.com     T: 770.635.0030

                                  Email: Darren@summervillemoore.com


*Counsel for Defendants/Counterclaimants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2012, I electronically filed this **MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send an email notification of such filing to the following attorney of record:

James A. Satcher, Jr., Esq.
3 Central Plaza Box 405
Rome, GA 30161-3233.

I hereby certify that I have also mailed by United States Postal Service the document to the following participant:

James A. Satcher, Jr., Esq.
3 Central Plaza Box 405
Rome, GA 30161-3233.

s/Robert K. Finnell
Georgia Bar No.  261575
The Finnell Firm
P.O. Box 63
Rome, Georgia 30162-0063
Tel:  (706) 235-7272
Email: bob@finnellfirm.com

s/Darren Summerville
Georgia Bar No. 691978
Summerville Moore, P.C.
400 Colony Square, Ste. 1900
1201 Peachtree Street, NE
Atlanta, Georgia 30361
T: 770.635.0030
Email: Darren@summervillemoore.com

*Counsel for Defendants/Counterclaimants*